STATE of Tennessee, ex rel., Sallie Mae Sanders SMITH and Bertha Horton et al., Appellees,

v.

MEMPHIS LIGHT, GAS AND WATER DIVISION, C. R. Henze, Elliot Whittington, Carry Ward, Charles Woelm and William T. Mullin, Appellants.

and

Lana Marie BUCHANAN, a minor, by Rosie Poindexter, her Guardian, Appellees,

v.

MEMPHIS LIGHT, GAS AND WATER DIVISION et al., Appellants.

Court of Appeals of Tennessee, Western Section.

March 26, 1980.

Application for Permission to Appeal Denied by Supreme Court July 28, 1980.

**250**

Frierson M. Graves, Jr., Memphis, for appellants.

Larry D. Austin, Memphis, for appellees Smith and Horton.

Mack H. Cherry, Nashville, for appellees Buchanan and Poindexter.

NEARN, Judge.

We find the sole issue on appeal to be whether the minor plaintiffs are all "natural" children within the meaning of the pension plan afforded its employees and certain beneficiaries by the Memphis Light, Gas and Water Division (MLG&W).

Fred Smith, a now deceased employee of MLG&W, retired in 1969. He had extra-marital relations with two women during his lifetime. He married neither, but had children by both. Fred Smith had six children by Sallie Mae Sanders Smith and had three children by Bertha Horton. There is no dispute or question over the fact that Fred Smith is the biological father of these children. Fred also had a wife, Clara Smith, who survived him. He had three children by her, but all are over 18 years of age and have no claim to any pension benefits. Fred Smith died in 1970. His wife Clara died in 1973.

Learnce Buchanan was also an employee of the Memphis Light, Gas and Water Division and retired in 1975. He died in 1976 but left no wife as he had never married. However he was survived by one child born of Rosie Poindexter on June 25, 1968. There is no dispute over the fact that Buchanan is the biological father of that child.

Fred Smith's pension benefits were paid to his lawful widow until her death. Subsequently Sallie Mae Sanders Smith and Bertha Horton filed a joint claim for pension benefits on behalf of their two sets of children.

After Buchanan's death Rosie Poindexter filed for pension benefits on behalf of his daughter.

The pension board denied benefits to both the Smith children and the Buchanan child. We need not belabor the procedures involved, but the result was that both the Smith and Buchanan children ultimately sought redress through *certiorari* in the Chancery Courts of Shelby County. Both Chancellors held, *inter alia*, that the children of Smith and Buchanan were entitled to pension benefits as "natural" children of Smith and Buchanan.

The Smith and Buchanan cases have been consolidated on appeal.

Insofar as pertinent to the issue on appeal, both at the time Smith and Buchanan each retired and when these children's claims were filed the pension plan provided that where there was no surviving spouse or after the surviving spouse died, the minor children of a deceased retired employee were entitled to divide the deceased employee's benefits. At these times the pension plan defined child as:

§ 1 (w) " 'Child' shall mean a natural son or daughter or a legally adopted son or daughter, under eighteen (18) years of age, of a member or of a beneficiary who has been a member of the retirement system."

The above definition of "child" was adopted by resolution of the MLG&W pension board on July 6, 1967. Prior to that time the plan provided:

§ 1 (w) "CHILD shall mean (1) a legitimate son or daughter under eighteen (18) years of age of a member or beneficiary who has been a member of the retirement system; (2) or a child by adoption who

has had the status of an adopted child for at least five years and who is under eighteen (18) years of age."

■ Counsel for the city argues that the Chancellors and this Court ought to construe the term "natural" child to mean only a "legitimate" child. We simply are unable to fathom the reasoning behind this argument. Ordinarily the terms "legitimate" and "natural" do not have the same meaning and never have had the same meaning. We see no reason why we should now give them the same meaning. All children, by virtue of biological processes, are the natural children of someone. They are all of man and woman born; Shakespeare's McDuff (who was from his mother's womb "untimely ripp'd") to the contrary notwithstanding.

The usual and ordinary meaning given to the appellation "legitimate" when referring to a child is the connotation that the child is one born in wedlock or declared to be legitimate by process of law. If one needs proof of the ordinary meaning of the word when used in its positive sense, all that needs to be done is to examine the meaning of the word in its opposite or negative usage. The term "illegitimate" is one of many chosen by society to brand children born out of wedlock. The branding of children with such harsh words because of the action of others is a societal custom the author of this Opinion cannot condone. In truth, children are never "illegitimate". If anyone is "illegitimate"; it is the parents who are so.

The term "natural" when used in describing a child has a broader meaning than "legitimate". Its usual meaning is of nature; of the body or biological. Legitimate children may be the natural children of the parents or not. A child born of a couple is their natural child whether the parents are married or not. Adopted children, although the law gives them all the rights and privileges of natural children, are not, in fact, the natural children of the adoptive parents.

1. For like definitions of the term see Black's Law Dictionary, Child (Revised 4th Ed. 1968);

The 1967 amendment to the pension plan is self-evident of an intent to change. Counsel for appellant argues that it was the intent of the drafters of the amendment simply to eliminate the prior time requirement for adoptive children's eligibility. If such was the board's intent, they certainly went about it the hard way. The simple elimination from the plan of the words "who has had the status of an adopted child for at least five (5) years" would have accomplished that end. We believe the board's intent was broader as evidenced by their action.

We need not fall back upon those cases which hold that pension plans are to be liberally construed in favor of beneficiaries. See *Miles v. Tennessee Consolidated Retirement System* (1976 Tenn.) 548 S.W.2d 299, 304 and *Collins v. City of Knoxville* (1944) 180 Tenn. 483, 176 S.W.2d 808.

Nor need we resort to strained or technical interpretations of ordinary words. Nothing in the pension plan indicates that the word "natural" is to be given other than ordinary meaning. If we give to the ordinary word "natural" its ordinary and natural meaning, we can only conclude that the term "natural son or daughter" used in the pension plan means the biological children of an employee.[1]

Therefore, we hold that the Smith and Buchanan children are included in the pension plan as the "natural sons or daughters" of an employee. The pension board acted arbitrarily in denying benefits to them.

The decrees of the Chancellors are affirmed with costs of appeal adjudged against appellant.

Done at Jackson in the two hundred and fourth year of our Independence and in the one hundred and eighty-fifth year of our Statehood.

MATHERNE and SUMMERS, JJ., concur.

*Shelby v. Central Woodwork, Inc.* (1960) 207 Tenn. 411, 340 S.W.2d 896.